**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| TAYLOR FORGE ENGINEERED SYSTEMS, INC., | CASE NO. 3:25-CV-01876-DAC |
| Plaintiff, | MAGISTRATE JUDGE DARRELL A. CLAY |
| vs. | **MEMORANDUM OPINION AND ORDER** [ECF #30] |
| NEXTGEN MACHINES LLC, *et al*., | |
| Defendants. | |

## INTRODUCTION

Plaintiff Taylor Forge Engineered Systems, Inc. (Taylor Forge), brought this action against Defendants NextGen Machines LLC, d/b/a Hause Machines and Hause Machines, Inc. (collectively, Hause). (ECF #13). Taylor Forge alleged it contracted with Hause for Hause to produce two custom machines: an Interior Diameter Boring Machine and an Outside Diameter Turning Machine. (*Id.* at ¶2). Taylor Forge alleges Hause breached the contract by not delivering the machines. (*Id.* at ¶3). Taylor Forge alleges the breach damaged its ability to perform on contracts with its customers. (*Id.* at ¶¶2, 4). Alternatively, Taylor Forge alleges Hause unjustly enriched itself by retaining the progress payments Taylor Forge made without providing the two machines. (*Id.* at ¶¶ 69-73).

This court has jurisdiction under 28 U.S.C. § 1332 as Taylor Forge is a corporation incorporated in Delaware with its principal place of business in Kansas and Hause is a limited liability company organized in Ohio and its sole member is an Ohio citizen. (ECF #14). The

parties subsequently consented to my exercising jurisdiction pursuant to 28 U.S.C. § 636(c). (ECF #19 at PageID 297).

Taylor Forge seeks summary judgment in its favor, asserting Hause breached the contract to produce the two machines and caused Taylor Forge $819,227 in damages. (ECF #30 at PageID 342-43). Hause has not responded to Taylor Forge's motion for summary judgment. In a prior status report, it reported having shuttered its business. (ECF #26).

## Operative Facts

Because Hause ceased business operations during this case, the discovery material is less than usual. Thus, the fact record consists of the allegations in Taylor Forge's complaint that Hause admitted in its answer (ECF #13, 17), the attachments to those filings (ECF #13-1, 13-2, 17-1, 17-2), and the attachments to Taylor Forge's motion (ECF #30-1, 30-2), including an affidavit from Mike Kilkenny, Taylor Forge's president and CEO (ECF #30-3).[1]

On September 22, 2023, Hause submitted a proposal to Taylor Forge to construct the Internal Diameter Boring Machine ("ID Boring Machine") that Taylor Forge would use to manufacture parts of components it would deliver to its customers. (ECF #13 at ¶15; ECF #17 at ¶15). Taylor Forge accepted Hause's proposal to build the ID Boring Machine on January 18, 2024 through Purchase Order #0055891. (ECF #13 at ¶15; ECF #17 at ¶15; *see also* ECF #13-1; ECF

[1] At times, Taylor Forge refers to Requests for Admission it served on Hause that went unanswered, contending those facts are conclusively established. *See* Fed. R. Civ. P. 36(a)(3) & (b). Although the docket includes a notice that Taylor Forge served those requests (ECF #24), Taylor Forge did not attach a copy of them to its motion nor do they otherwise appear in the docket. So while the facts in the requests may be conclusively established, I cannot discern what those "facts" may be. While I could order Taylor Forge to supplement its filing, a review of the other supporting materials shows Taylor Forge is nonetheless entitled to summary judgment. *See* Fed. R. Civ. P. 56(e)(3). Therefore, to avoid further delay in this matter, I decide the motion on the record that is before me.

#17-2). Purchase Order #0055891 provided Taylor Forge would pay $689,805.01 for Hause to deliver by December 2024 (later modified to February 2025) the following:

(1) A small ID Boring Machine,

(2) A fixture plate with a 14" radius,

(3) A fixture plate with a 21" radius,

(4) A tooling head package,

(5) Installation and training,

(6) Drawing, design, use and function notes

(7) Additional tooling heads, and

(8) Tool change assist services.

(ECF #13 at ¶16; ECF #17 at ¶16; ECF #13-1 at PageID 222, 227-29; *see also* ECF #17-2 at PageID 282).

On April 8, 2024, Hause submitted a second proposal to Taylor Forge, this time to construct the Outer Diameter Turning Machine ("OD Turning Machine"), also for Taylor Forge to use in manufacturing parts of components it would deliver to its customers. (ECF #13 at ¶18; ECF #17 at ¶18). Taylor Forge accepted Hause's proposal to build the OD Turning Machine on May 20, 2024 through Purchase Order #0056795. (ECF #13 at ¶18; ECF #17 at ¶18; *see also* ECF #13-2; ECF #17-1). Purchase Order #0056795 provided that Taylor Forge would pay $689,805.01 for Hause to deliver a small OD Turning Machine by May 2025. (ECF #13 at ¶19; ECF #17 at ¶19; ECF #13-2 at PageID 232, 237; ECF #17-1 at PageID 273, 278).

Both purchase orders established a staggered payment schedule where Taylor Forge would pay Hause 10% of the purchase price with the order, make four 20% progress payments at certain

events over the life of the contract, and pay the final 10% after delivery. (ECF #13-1 at PageID 229, ECF #13-2 at PageID 238). Additionally, each purchase order contained a time-of-the-essence clause establishing a failure to deliver conforming goods by the delivery date as a breach of contract. (ECF #13-1 at PageID 231; ECF #13-2 at PageID 240).

Hause ultimately had issues constructing both machines and delayed their scheduled delivery dates by several months. (ECF #13 at ¶¶34-36; ECF #17 at ¶¶34-36). On May 15, 2025, Rob Brubaker, Hause's CEO, had a phone call with John Lang, the employee responsible for the contract at Taylor Forge during which Mr. Brubaker reported the parts required for the OD Turning Machine had not been ordered. (ECF #13 at ¶34; ECF #17 at ¶34). So, Taylor Forge withheld the progress payment for those parts. (*Id.*).

Mr. Lang and Mr. Brubaker met at Hause's facility later in May and Mr. Brubaker assured Taylor Forge that Hause would be able to deliver both the ID Boring Machine by August 27, 2025 and the OD Turning Machine by October 24, 2025. (ECF #13 at ¶¶35-36; ECF #17 at ¶¶35-36).

Mr. Brubaker called Mr. Lang again on June 19 and Mr. Brubaker informed Taylor Forge that Hause was discontinuing operations. (ECF #13 at ¶41; ECF #17 at ¶41). Mr. Brubaker informed Mr. Lang that Hause was planning to send Taylor Forge the design information for both the ID Boring Machine and the OD Turning Machine, along with certain components for the ID Boring Machine. (*Id.*). Taylor Forge views the ID Boring Machine design data and parts as of "virtually no value" and claims it did not receive "anything of value related to the OD Turning Machine." (ECF #30-3 at ¶¶7, 9).

Taylor Forge made advance payments to Hause of $331,805 for the ID Boring Machine and $207,102 for the OD Turning Machine. (ECF #13 at ¶46; ECF #17 at ¶46; ECF #30-3 at

¶¶4, 8). Taylor Forge paid a total of $538,907 to Hause. (*Id.*). On July 17, Mr. Lang emailed Mr. Brubaker requesting a refund of the most recent progress payments, writing:

> After reviewing the parts received, I don't believe the value we received in design information and components is equivalent to the value in progress payments Taylor Forge submitted to Hause Machines. I am writing to request a refund of the last 20% progress payments made on each of the machines, or a total of $270,790 as detailed below.
>
> PO 55891 210H 20% payment 10/4/2024 $132,722
>
> PO 56795 212H 20% payment 2/7/2025 $138,068
>
> The refund can be submitted to myself or Carl Medlin at Taylor Forge.

(ECF #13 at ¶47; ECF #17 at ¶47). Hause did not refund such payments. (ECF #30-3 at ¶10).

Without the ID Boring Machine or the OD Turning Machine, Taylor Forge was forced to pay employees to work night shifts and overtime to complete both machines and fulfill its contractual obligations to its customers. (ECF #30-3 at ¶15). These internal costs totaled $280,320. (*Id.*) Taylor Forge claims it has been damaged by at least $819,227. (*Id.* at ¶16).

## STANDARD FOR SUMMARY JUDGMENT

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that can affect the outcome of the case, and a dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Notably, the moving party carries the burden of showing there is no genuine issue of material fact, but the nonmoving party is not relieved of its burden of producing evidence that would support a jury verdict. *Id.* at 256. Likewise, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest

upon mere allegations or denials of the pleading but must set forth specific facts showing that there is a genuine issue for trial." *Id.*; *see also* Fed. R. Civ. P. 56(e).

Summary judgment, though, is not to be equated with default judgment when a motion is unopposed. Even where the motion is unopposed, Rule 56 requires that a court determine when the moving party has established a right to relief as a matter of law and that no genuine issue of material fact exists before the court may enter summary judgment. *Donlin v. Watkins*, 814 F.2d 273, 277 (6th Cir. 1987); *Kendall v. Hoover Co.*, 751 F.2d 171, 173-74 (6th Cir. 1974).

## Discussion

Federal courts sitting in diversity apply the substantive law of the forum state and federal procedural law. *See generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). When interpreting contracts in a diversity action, a court generally applies the parties' contractual choice of governing law. *Savedoff v. Access Grp.*, 524 F.3d 754, 762 (6th Cir. 2008). Both purchase orders contain a choice-of-law provision stating each contract is "to be construed in accordance with the laws of the State in which the office of buyer is located"—*i.e.*, Kansas. (ECF #13-1 at PageID 231, 228; ECF #13-2 at PageID 240, 237; ECF #14). Thus, Kansas substantive law governs the dispute.

### I. Counts 1 and 2: breach of contract

#### A. Taylor Forge has established all elements of its claims for breach of contract

Under Kansas law, "[t]he elements of a breach of contract claim are: (1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damage to plaintiff caused by the breach." *Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (Kan. 2013).

First, there is no genuine issue about the existence of a contract. Kansas law holds a valid contract is shown by a written agreement containing the parties' written intent to be bound by the agreement's terms. *See M West, Inc. v. Oak Park Mall, L.L.C.*, 234 P.3d 833, 845-46 (Kan. Ct. App. 2010). Here, Taylor Forge and Hause agree about the terms and validity of the two purchase orders. (ECF #13 at ¶16, 19; ECF #17 at ¶16, 19). Purchase Order #0055891 provided that Taylor Forge would pay $689,805.01 for Hause to provide a small ID Boring Machine alongside additional components, information, and related services. (ECF #13 at ¶16; ECF #17 at ¶16; ECF #13-1 at PageID 222, 227-29; *see also* ECF #17-2 at PageID 282). Purchase Order #0056795 provided that Taylor Forge would pay $690,340 for Hause to deliver a small OD Turning Machine by May 2025. (ECF #13 at ¶19; ECF #17 at ¶19; ECF #13-2 at PageID 232, 237; ECF #17-1 at PageID 273, 278). Thus, both parties agree Taylor Forge and Hause had two written agreements showing a written intent to be bound by their terms.

Second, there is no genuine issue about consideration. Kansas law defines consideration as "some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility, given, suffered, or undertaken by the other." *Varney Bus. Servs., Inc. v. Pottroff*, 59 P.3d 1003, 1014 (Kan. 2002) (quoting 17A Am.Jur.2d, Contracts § 113). Both parties agree Taylor Forge promised to pay $689,805.01 for the ID Boring Machine and $690,340 for the OD Turning Machine and Hause promised to provide those machines. (ECF #13 at ¶16, 19; ECF #17 at ¶16, 19). Thus, both parties agree the two contracts are supported by consideration.

Third, there is no genuine issue about performance and breach. Under Kansas law, a party breaches a contract when it fails to perform its contractual obligations. *Peterson v. Ferrell*, 349 P.3d 1269, 1274-75 (Kan. 2015). The parties agree Taylor Forge performed its obligations by making

$538,907 in advance payments to Hause: $331,805 for the ID Boring Machine and $207,102 for the OD Turning Machine. (ECF #13 at ¶46; ECF #17 at ¶46; ECF #30-3 at ¶¶4, 8). The parties also agree Hause sent Taylor Forge the design information for both the ID Boring Machine and the OD Turning Machine, along with certain components for the ID Boring Machine after informing Taylor Forge that Hause was discontinuing operations. (*See* ECF #13 at ¶41; ECF #17 at ¶41). As this was less than what Hause promised to deliver (see ECF #13 at ¶16, 19; ECF #17 at ¶16, 19), there is no genuine dispute that Hause breached its promise to deliver the goods and services for which Taylor Forge paid. *See Rhythm Eng'g, LLC v. Darrel Varni Elec., Inc.*, No. 24-cv-2463, 2025 WL 2107678, at *2 (D. Kan. May 23, 2025) ("As a result, [plaintiff] suffered damages because [defendant] breached its promise to pay the for the goods and services that [plaintiff] provided by the date its payment was due.")

Fourth, there is no genuine issue about damages. Under Kansas law, the goal when awarding contract damages is to put the nonbreaching party in the position it would have been in had the breach never occurred but without allowing a windfall. *State ex rel. Stovall v. Reliance Ins. Co.,* 107 P.3d 1219, 1228 (Kan. 2005). Kansas law also requires there be a reasonable basis for computation of damages and prohibits recovery of damages either "not the proximate result of the breach" or "remote, contingent, and speculative in character." *Id.* Kansas law does not require contract damages be established with certainty but they "cannot be too conjectural and speculative to form a sound basis for measurement." *Brown v. United Methodist Homes for the Aged*, 815 P.2d 72, 86 (Kan. 1991).

The parties agree Taylor Forge paid a total of $538,907 to Hause. (ECF #13 at ¶46; ECF #17 at ¶46). The parties also agree Taylor Forge received the design information for both the ID

Boring Machine and the OD Turning Machine, along with certain components for the ID Boring Machine after informing Taylor Forge that Hause was discontinuing operations. (*See* ECF #13 at ¶41; ECF #17 at ¶41). Through Mr. Kilkenny's affidavit, Taylor Forge maintains that the design data and parts for the ID Boring Machine were of "virtually no value," it did not receive "anything of value related to the OD Turning Machine," Hause did not refund any payments Taylor Forge made, and Taylor Forge incurred $280,320 in additional costs to complete the contracts for which it needed the ID Boring Machine and the OD Turning Machine. (ECF #30-3 at ¶¶7, 9, 10, 15). Taylor Forge's affidavit totals the damages to be $819,227 ($538,907 + $280,320). (*Id.* at ¶¶15-16).

Mr. Kilkenny's affidavit is sufficient evidence to establish Taylor Forge's damages. Fed. R. Civ. P. 56(c)(1)(A) and (c)(4) allows a motion for summary judgment to be supported by an affidavit so long as it is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated." Mr. Kilkenny's affidavit sets out he is competent to testify and has personal knowledge and involvement with Taylor Forge's purchase of the ID Boring Machine and the OD Turning Machine from Hause. (ECF #30-3 at ¶¶1-2). Hause had a burden to set forth specific facts showing that there is a genuine issue for trial on damages and cannot rest solely upon the denials in its answer. *See Anderson*, 477 U.S. at 256; Fed. R. Civ. P. 56(e).

The damages Taylor Forge seeks to recover would restore it to the position it would have been in had the breach never occurred without bestowing a windfall. *State ex rel. Stovall,* 107 P.3d at 1228. Nor are they "too conjectural and speculative to form a sound basis for measurement." *Brown*, 815 P.2d at 86. Though Taylor Forge's amended complaint originally sought pre- and post-judgment interest, and attorneys' fees and costs (ECF #13 at PageID 219), the motion for summary

judgment confines itself to "the $819,227 in compensatory, consequential, and/or incidental damages that it has suffered as a direct result of Defendant Hause's breach." (ECF #30 at PageID 341). Taylor Forge claims $819,227 in total damages, consisting of the $538,907 in payments made to Hause for which it received "virtually nothing of value in return" and $280,320 in additional internal costs incurred for Taylor Forge to deliver on the contracts for which it originally purchased the machines. (*See* ECF #30-3 at ¶¶ 15-16). Recovery of the $538,907 Taylor Forge paid to Hause for two machines never delivered would restore Taylor Forge to the position it was in before Hause's breach. Kansas law also allows parties to recover the additional cost to complete the contract after the breach, so Taylor Forge may recover the additional costs it incurred to complete its own contracts that depended on Hause delivering the two machines. *See State ex rel. Stovall*, 107 P.3d at 1229 ("The correct measure of damages is the cost to build the concrete trench system, not to exceed the cost to build an earthen trench system as of the 1995 discovery date."). I thus find no genuine dispute that Taylor Forge was damaged by $819,227.

**B. Hause's affirmative defenses to breach of contract fail**

In its answer, Hause raised three affirmative defenses: accord and satisfaction, waiver and/or estoppel, and failure to mitigate damages. (ECF #17 at ¶¶51-57). I analyze the first two defenses together because Hause contends Taylor Forge "agreed to accept the work in progress and release [Hause] from further obligation under its contracts" and Taylor Forge "has either waived its claims asserted herein or is estopped from denying the settlement reached by the parties as set above." (*Id.* at ¶¶51, 55).

**1. Accord and satisfaction/waiver/estoppel**

Kansas law recognizes accord and satisfaction as an affirmative defense to breach of contract. The party asserting the defense must show "an offer in full satisfaction of an obligation, accompanied by such acts and declarations or made under such circumstances that the party to whom the offer is made is bound to understand that if he accepts the offer, it is in full satisfaction of and discharges the original obligation." *EF Hutton & Co. v. Heim*, 694 P.2d 445, 451 (Kan. 1985); *see also Gulick v. State Farm Mut. Auto. Ins. Co.*, 780 F. Supp. 3d 1169, 1204-05 (D. Kan. 2025).

Hause asserts in its answer that Taylor Forge "issued new purchase orders to [Hause] in the amounts of the work completed and accepted by" Hause and then Taylor Forge "took possession of the parts and equipment then available, and the transfer of the engineering data relating thereto." (ECF #17 at ¶¶51, 53). Hause attached copies of Purchase Orders #0055891 (the ID Boring Machine) and #0056795 (the OD Turning Machine). (ECF #17-1 at PageID 273; ECF #17-2 at PageID 282). They have total net values of $331,805 and $207,102, the amounts for the progress payments for each machine. (ECF #17-1 at PageID 278; ECF #17-2 at PageID 287). The purchase orders also each bear revision notes. The revision note on Purchase Order #0055891 stated "8/22/25– deleted all lines but line 1 per David Plucknett– company went out of business. Adjusted invoiced amount to the work that was progress payments." (ECF #17-2 at PageID 288). The revision note on Purchase Order #0056795 stated "8/22/25 – adjusted pricing to what was invoiced, company went out of business." (ECF #17-1 at PageID 279).

Taylor Forge argues these revisions cannot serve as an accord and satisfaction because they do not meet the procedure in the contracts for releasing a claim. (ECF #30 at PageID 356). Both

purchase orders advanced by Hause have a section on waiver stating: "No waiver of a breach of any provision of this order shall be effective to discharge in whole or in part any claim or right arising out of such breach unless such waiver is in writing and signed by buyer." (ECF #17-1 at PageID 281; ECF #17-2 at PageID 290). Neither revision note states in writing Taylor Forge was waiving Hause's breach nor are the purchase orders signed by Taylor Forge. Thus, by the terms of the purchase orders, neither revision can serve as a waiver of Taylor Forge's claims for a breach by Hause. *See Heim*, 694 P.2d at 451 (the defense requires the offer of accord and satisfaction be "made under such circumstances that the party to whom the offer is made is bound to understand that if he accepts the offer, it is in full satisfaction of and discharges the original obligation"). Under Kansas law, the lack of evidence supporting an agreement to waive a claim or extinguish the contract is fatal to an accord-and-satisfaction defense. *See Fed. Deposit Ins. Corp. v. Addleman*, 750 P.2d 1037, 1040 (Kan. 1988) ("In the absence of documents or acts directly evidencing a 'meeting of the minds' between DCNB and Addleman that the guaranty contract was to be extinguished, there is no accord and satisfaction."). Thus, Hause's defenses for accord and satisfaction and waiver and/or estoppel do not prevent Taylor Forge from being entitled to judgment as a matter of law.

**2. Failure to mitigate damages**

Hause also raises an affirmative defense that Taylor Forge has failed to mitigate its damages. (ECF #17 at ¶¶ 56-57). Under Kansas law, a party injured by a breach of contract by another is "under a duty to exercise reasonable care to avoid loss or to mitigate and minimize the resulting damage." *Iseman v. Kansas Gas & Elec. Co.*, 567 P.2d 856, 857 (Kan. 1977), *overruled on other grounds, York v. InTrust Bank, N.A.*, 962 P.2d 405 (Kan. 1988). Under Kansas law, mitigation

of damages is an affirmative defense, and the burden of proving failure to mitigate rests with the party asserting the defense. *Rockey v. Bacon,* 470 P.2d 804, 808-09 (Kan. 1970). Hause does not advance any facts to support this defense beyond the bare allegation in its answer. (*See* ECF #17 at ¶¶ 56-57). Without evidence to support it, this defense fails under Kansas law. *See Rockey*, 470 P.2d at 809 ("Even had such a defense been interposed, the record discloses no evidence which would have sustained it.") Moreover, Taylor Forge advances Mr. Kilkenny's affidavit as evidence it did mitigate damages: Mr. Kilkenny explained Taylor Forge engaged "the best and most reasonable alternative vendor" to complete the ID Boring Machine and the OD Turning Machine. (ECF #30-3 at ¶¶12-14). Taylor Forge also delayed fulfillment of contracts that depended on those machines by 6 months. (*Id.* at ¶11). Thus, Hause's defense of failure to mitigate damages does not prevent Taylor Forge from being entitled to judgment as a matter of law.

**II. Count 3: unjust enrichment**

Last, Taylor Forge seeks summary judgment on Count Three, its claim for unjust enrichment. (ECF #30 at PageID 349, 352-53). Under Kansas law, unjust enrichment is a quasi-contract theory, so it cannot apply when there is a valid and enforceable written contract governing the acts at issue. *See Ice Corp. v. Hamilton Sundstrand Inc.*, 444 F.Supp.2d 1165, 1170-71 (D. Kan. 2006); *see also Midwest Asphalt Coating, Inc. v. Chelsea Plaza Homes, Inc.,* 243 P.3d 1106, 1110 (Kan. Ct. App. 2010) ("Recovery for payment under the terms of a contract and quantum meruit are mutually exclusive legal concepts." (citing *Whan v. Smith,* 285 P. 589, 591 (Kan. 1930)). Thus, because Taylor Forge and Hause had two enforceable contracts governing the purchase of the ID Boring Machine and the OD Turning Machine, Taylor Forge cannot also recover for unjust enrichment and thus is not entitled to judgment as a matter of law on this claim.

## CONCLUSION

After review of the record, the parties' arguments, and the law, Taylor Forge's motion for summary judgment is **GRANTED** in part with respect to liability on Counts 1 and 2 and **DENIED** in part with respect to liability on Count 3. Taylor Forge is entitled to damages of $819,227. If Taylor Forge seeks additional payment in the form of costs and expenses incurred in connection with this action, including reasonable attorney's fees, or seeks post-judgment interest, it must file an appropriate motion by October 23, 2026. Final judgment will issue following resolution of this remaining issue.

Dated: October 9, 2026

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE